UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

SECURITIES & EXCHANGE COMMISSION,

        Plaintiff,

   - against -

CREDIT BANCORP, et al,

        Defendants.

------------------------------------X

99 Civ. 11395 (RWS)

O R D E R

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/4/10

Sweet, D.J.,

     Defendant's motion to release funds, dated January 27, 2010, will be heard on submission, without oral argument, on February 10, 2010.

     It is so ordered.

New York, NY
February 4, 2010

ROBERT W. SWEET
U.S.D.J.

THOMAS RITTWEGER
Reg #: 51309-054
FCI Fort Dix- Camp
P.O. Box 2000
Fort Dix, NJ 08640

January 27, 2010

The Honorable Robert W. Sweet, U.S.D.J.
United States District Court
500 Pearl Street
New York, NY 10007

RECEIVED
FEB 0 1 2010
JUDGE SWEET CHAMBERS

RE: Motion for Release of funds to hire counsel
   SEC v. Credit Bancorp (Rittweger), 99-CV-11395 (RWS)

Dear Honorable Judge Sweet:

   Enclosed please find the above captioned Motion for your consideration. I respectfully request that you grant the Motion so that I may hire counsel in this matter (and in my criminal appeal).

   Presently, I believe a hearing is scheduled for March 17, 2010 regarding the SEC's Motion for Summary Judgment for which I would like to be represented by counsel at that hearing, and for which a submission opposing Summary Judgment needs to be prepared and submitted on my behalf.

   At a minimum, the $200,000 that was taken from me shoud be returned. During our settlement negotiations, the SEC had already conceded that those funds are mine and I would get credit for the $200,000 against any settlement amount. I have already provided your Honor copies of correspondence between Mr. Melton of the SEC and Mr. Tomback with regard to the $200,000, as exhibits to my November 12, 2009 letter to you requesting an extension of time. Thus, in light of the fact that the SEC has also conceded that settlement has not taken place, and, there is no outstanding SEC judgment against me, those funds should be returned to me immediately, so that I may hire counsel in this matter, and in my criminal appeal, which is still on-going. I respectfully submit that withholding those funds denies me counsel of my choice in both this civil matter and in my criminal appeal. Accordingly, I respectfully pray that your Honor will Order the release of those funds so that I may hire counsel.

   I already spoken with counsel that I would like to hire, but need the release of those funds so that I may actually retain this firm.

   Lastly, I respectfully request that the Court make and distribute copies of this Motion to the various parties. I have already been deemed indigent on two occassions in the Southern District of New York and do not have the funds to make the necessary copies (at $.15 per page) and mail them to everyone.

   Thank you for your kind consideration in this matter.

Respectfully submitted,

Thomas Rittweger, Pro Se

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| Thomas Rittweger<br>Pro Se<br><br>Securities & Exchange<br>    Commission<br><br>                        Plaintiff,<br><br>    v.<br><br>Credit Bancorp, Ltd., Credit<br>Bancorp, Inc., Richard Blech,<br>Thomas Rittweger & Douglas<br>Brandon<br><br>                        Defendants, | Docket No.: 99-CV-11395 (RWS)<br><br>Civil Action<br><br>Motion for Unfreeze of Assets<br>and Release of Funds to Hire<br>Counsel |

RECEIVED FEB 0 1 2010 JUDGE SWEET CHAMBERS

### AFFIRMATION AND CERTIFICATION IN SUPPORT OF MOTION
### TO UNFREEZE ASSETS AND RELEASE FUNDS TO HIRE COUNSEL

Pursuant to 28 USC §1746, I, Pro Se Defendant, Thomas Rittweger, hereinafter, "Mr. Rittweger"), do hereby certify, under penalty of perjury, that the following is true and correct to the best of my knowledge.

### Preliminary Statement

Mr. Rittweger files this instant Motion to Unfreeze Assets and Release Funds to Hire Counsel as a result of the Motion for Summary Judgment filed by Plaintiff, Securities & Exchange Commission (hereinafter, "SEC").

The SEC and/or court-appointed receiver is currently holding approximately $200,000 of Mr. Rittweger's funds and some $3,400,000 paid on behalf of Mr. Rittweger by insurer's as part of a proposed settlement agreement between Mr. Rittweger and the SEC, which the SEC claims, has not taken place. Thus, those funds should be released to Mr. Rittweger so that Mr. Rittweger can hire counsel to defend the SEC's allegations and properly respond to the Motion for Summary Judgment. Mr. Rittweger has no other funds to hire counsel and thus cannot properly respond to the SEC's Motion for Summary Judgment, nor properly defend the SEC's allegations. The SEC is unlawfully holdings Mr. Rittweger funds thus denying him counsel to defend the SEC's allegations.

## DISCUSSION

On November 12, 2009, Mr. Rittweger submitted a letter to the Honorable Robert W. Sweet, United States District Court Judge, requesting an extension of time to address the SEC's Motion for Summary Judgment and raising certain discrepancies in the alleged "Statement of Undisputed Facts" section filed in support of their Motion for Summary Judgment (see attached as Exhibit "A").

In that letter, Mr. Rittweger, inter alia, requested the return of the $200,000 and $3,400,000 (see Exhibit "A"- pages 5-6).

On December 2, 2009, in response to Mr. Rittweger's previous attorney, Andrew Tomback's Motion to be relieved as counsel, Mr. Rittweger sets out in detail the circumstances surrounding the $200,000 and $3,400,000, and again requests that the funds be released so that he could hire counsel (see attached as Exhibit "B").

Due to mail delays at FCI Fort Dix, the Court ordered that Mr. Tomback be relieved as counsel prior to Mr. Rittweger even receiving Mr. Tomback's Motion to be relieved and thus, Mr. Rittweger's comments were not even considered.

To date, I respectfully submit that the Court has not made any ruling on the release of funds to pay for counsel. Thus, Mr. Rittweger files this instant Motion for the release of funds so that he may hire counsel to properly address the SEC's Motion for Summary Judgment and defend the SEC allegations. Especially in light of the lawsuit filed the government's sole co-operating witness, Richard Blech (hereinafter, "Blech"), against the court-appointed receiver and insurer's for Credit Bancorp, whereby Blech raises for the first time, misconduct by the prosecutor's which "coerced and threatened" Blech into falsely testifying against Mr. Rittweger. Blech specifically states that the prosecutors sent him for a "three-week witness training" and that Blech "was told by the US Attorney what to say, during which subjects he had to adjust his mood and what words he had to use" when testifying against Mr. Rittweger (see Blech lawsuit already in court's possession). Mr. Rittweger respectfully submits that issues raised in Blech's lawsuit are sufficient to call into question the SEC's alleged "Statement of Undisputed Facts" disallowing a Summary Judgment to be issued.

In the interest of brevity, and to not be repetitive, Mr. Rittweger respectfully refers the Court to his November 12, 2009 and December 2, 2009 letters attached hereto as Exhibits "A" & "B" respectively (and the supporting exhibits thereto already submitted to this Court previously), and ask that the Court consider those issues and arguments raised in Exhibits "A" & "B" be incorporated as part of the "Discussion" section of this Motion.

## PRAYER FOR RELIEF

Mr. Rittweger respectfully requests that the Court Order the following relief:

1. That the SEC and/or court-appointed Receiver return the approximate $200,000 they took from Mr. Rittweger under the original proposed settlement with the SEC that was never completed, so that Mr. Rittweger can hire counsel,

2. That the SEC and/or court-appointed Receiver return the $3,400,000 paid to the Receiver by Insurers for Credit Bancorp as part of the proposed SEC settlement with Mr. Rittweger, which said settlement has not been completed. The funds will be used for Mr. Rittweger to hire counsel to defend the SEC allegations,

3. That the SEC provide a copy of their entire Credit Bancorp file, so that Mr. Rittweger may properly prepare and response to the Motion for Summary Judgment and begin preparing for trial, and

4. That the Receiver provide me a **detailed line item by line item** billing of his services as Receiver for the complete term of his service.

Pursuant to 28 USC §1746, I, Thomas Rittweger, do hereby certify, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge.

Respectfully submitted,

Dated: JANUARY 27, 2010

_____
Thomas Rittweger, Pro Se

3

**EXHIBIT   A**

THOMAS RITTWEGER
Reg #: 51309-054
FCI Fort Dix- Camp
P.O. Box 2000
Fort Dix, NJ 08640

*[Handwritten annotation, apparently by Judge Sweet:]* Time to oppose the SEC motion for summary judgment is extended to September 19 [?]. So ordered.
JUDGE SWEET [stamp]
USDJ
11-17-09

November 12, 2009

The Honorable Robert W. Sweet, U.S.D.J.
United States District Court
500 Pearl Street
New York, NY 10007

RE: SEC's Motion for Summary Judgment
    **SEC v. Credit Bancorp, LTD., et als**, Docket No.: 99 Civ 11395 (RWS)

Dear Honorable Judge Sweet:

On November 5, 2009, through the regular prison mail (and not through "legal" mail), I received a copy of the above captioned Motion. Due to the fact that I will be representing myself in this matter and have limited access (at best) to only <u>some</u> of the records in this case, I am respectfully requesting a 120-day extension of time to properly research and respond to the SEC's Motion for Summary Judgment.

It is my understanding that a Motion for Summary Judgment can only be granted if the facts are undisputed. In my cursory review of the SEC's filing, I respectfully submit that there are substantial discrepancies and disputes in the facts they allege, <u>all</u> of which I intend to address and challenge in my response, should you grant the requested extension.

So that your Honor may make an informed decision to grant the extention, I offer the following, which are <u>some</u> of the <u>disputed</u> facts:

1) First, the SEC seeks disgorgement of 18,128,599.40, the exact amount of my restitution in the criminal case, which the US Attorney's Office has already conceded, has been satisfied (see Exhibit "A"- January 17, 2008 letter & October 3, 2008 Court Order). The SEC also wrongly states that this was "the amount the criminal court found Rittweger to have taken from investors" (see SEC Proposed Final Judgment, page 4, note 1). The court actually held that is was the amount of "actual loss" incurred by CBL customers, which I respectfully submit (and Blech admitted at trial), was caused by Blech's leveraging of customer assets, of which Blech testified, such leverage, I had no part in. Thus, this is a disputed fact and a Summary Judgment can not be obtained.

Further, the CBL Receiver, Carl Loewenson testified at trial for the government and stated that the Receiver's fees had reached "approximately $15 million" (see Exhibit "B"- Loewenson testimony, tr. tr., page 186:7-10). That number has since been revised to be more than $28 million (see Exhibit "C", Blech Lawsuit section 3.2). Concurrently, on January 17, 2008, the US Attorney admitted in a letter to Judge Koeltl that, as of that date, the "actual loss" to CBL customers was, in the worse case, $12 million (see Exibit "A"). Simple mathematics would show that if the Receiver's fees were $28 million and the loss to customers was $12 million (after Receiver's fees), then there was <u>no loss</u> to CBL customers at the time the SEC lawsuit was instituted in November of 1999. In fact, the numbers provided by the US Attorney would indicate that now

that all of the dust has settled, there would have actually been a $16 million gain had it not been for the Receiver's fees of $28 million. In other words, after paying the Receiver $28 million, there is now a $12 million loss, which means that there would be a $16 million gain not withstanding the Receiver's fees, thus the SEC would have caused the loss by installing a Receiver and paying him $28 million.

Further proof of the discrepancy in "loss" in this case, would be Judge Koeltl's findings at the January 2008 hearing in New York regarding the restitution amount concerning Blech, myself and Brandon, which said hearing is referenced in Blech's lawsuit (see Exhibit "C", section 4.4). According to the lawsuit, Judge Koeltl "determined that the [restitution] amount of USD $18 million had to be fixed at zero. This because the Receiver was not able to indicate unequivocally before Judge Koeltl what the total in customer investment was or how much money and monetary instruments of the customers he was able to get back, and how much he paid the customers."

2) The SEC claims that no such "risk-less arbitrage" transactions existed (see SEC Motion for Summary Judgment, page 3, "(3)"); the term "risk-less arbitrage" meaning, simultaneous buy-sell transactions. However, the government's sole co-operating witness, Richard Blech, testified that "simultaneous buy-and-sell transactions [was] one of a variable of 10 to 20 different types of transactions that we [CBL] were involved in (see Exhibit "D", Blech testimony tr. tr., page 286:13-16). This is yet another disputed fact supported by the testimony of the government's own (and sole) co-operating witness.

3) The SEC claims that I misrepresented that investor assets would be held in US custodial banks or brokerage accounts, when in fact they were often "held" in foreign bank and brokerage accounts. I believe this is a legal question and perhaps factual since I would be entitled to a jury trial, and I respectfully submit that any US denominated securities held at Depository Trust Corporation in New York never leave the custody of the United States. I respectfully submit that if securities are converted from "paper" form to "electronic" form (as was the case with CBL), those securities legally (and technically) never leave the custody of DTC located in the United States. In further support of that conclusion, all of the securities deposited were deposited in the corresponding bank or brokerage house of the foreign institutions, which said corresponding bank or brokerage house were all located here in the US, for further "credit" to the foreign institution. So even if credit is given overseas, it is only a computer entry; the US denominated securities never leave the US. I respectfully submit that this is a disputed fact which calls for at least a legal conclusion, and because it involves a fact, I believe I am entitled to a jury trial; an issue that I intend to fully brief in my response.

Your Honor, I respectfully ask that you also take into consideration that I work from 7 am to 3 pm, and with the 4:00 pm count and dinner, I only have access to the law library at Fort Dix from about 6:00 pm to 9:00 pm. Plus, the prison is currently beginning the process of moving the law library, so it will be closed for an unspecified period of time and I will have no access at all. Additionally, the library has only limited resources, ie., some federal reporters covering appellate decisions. There are no Supreme Court, District Court, shepardization, digest, or administrative law and statutes covering the SEC. Hence, I lack the necessary legal resources to challenge a case of this magnitude in a timely fashion from prison, especially in light of the fact that I am not an attorney. As such, requests must be made outside of the Camp to obtain legal reference materials which can take up to a month or two to receive from friends (if received at all), and as such, I may request the SEC to provide some research.

As your Honor may recall, when this case was originally served upon me on November 17, 1999, I appeared before your Honor the very next day on November 18. At that hearing, your Honor may recall that I agreed to co-operate fully with the SEC investigation and allow them to copy all of the documents in my offices. At the end of November, I also did a six (6) hours interview (by telephone while on a pre-scheduled vacation with my family) with the SEC where I answered every question posed to me without hesitation or reservation, because this was to be only a civil matter. In fact, at the end of the interview, my answers raised some uncertainties in the SEC allegations and I was the one who suggested that if they wanted to know if Blech was leveraging securities, they should get on a plane and go to Switzerland to talk to Blech. That is when it was decided by Ira Sorkin and Ken Lynch (CBL counsel) to fly to Switzerland to meet with Blech.

The reason I bring this to your attention, your Honor, is that at those meetings at Blech's home in Switzerland, Blech (after adamantly denying all of the allegations to me and others), now admitted his wrongdoing to Sorkin and Lynch and in doing so identified his co-conspirators. Blech identified Susie Allen and others in Europe, who knew of and helped him perpetrate his fraud. Ken Lynch, who took detailed notes at those three days of meeting on November 30, December 1 and 2, clearly identified that Blech listed Allen and those in Europe as his co-conspirators. Lynch's notes are clear, that at no time during those meetings, did Blech identify me as being involved in his fraud (see Exhibit "E", Lynch's Notes). In fact, Lynch testified at trial that at those meetings, Blech made no mention whatsoever of my involvement in a conspiracy or fraud with him (see Exhibit "F"- Lynch's testimony, tr. tr., pages 2715:12-2724:15). Lynch's notes show that even when Sorkin told Blech that he could mitigate any potential criminal sentence with his co-operation through a 5K1.1 reduction, Blech still did not identify me as a co-conspirator. And why not? The simple answer is because I was not involved in a conspiracy or fraud with Blech in any fashion. Common sense would dictate that because this was a civil matter, and it was at a time when Blech was going to co-operate and admit his wrongdoing, I would respectfully submit that this would be the one time that Blech was telling the complete truth. Blech had to be completely honest with Sorkin in order for Sorkin to assess the extent of Blech's exposure.

It was only after hearing that Sorkin admitted that Blech committed fraud in open court in front of your Honor on December 3, 1999, did Blech frantically call Lynch several times on December 4, 1999, and now stated to Lynch that "he was going to bring everyone down with him" (see Exhibit "G", Lynch testimony, tr. tr., page 2726:11-16 and 2730:12-20).

I bring all of this to your attention your Honor, because although the instant case is a civil matter, it is based upon the same set of facts and circumstances as the criminal case, which has already been adjudicated and is still on appeal. In fact, they are inextricably intertwined. It is my understand that when the SEC was formed, never did Congress intend for people to be misled by the SEC to be then criminally charged. From the beginning, 15 USC §77v intended that if a citizen asserted his 5th Amendment, the SEC had the burden to choose civil or criminal. If it was the latter, then under §77v, they were to stop the investigation and transmit all evidence to the US Attorney, §78u(d)(1). I respectfully submit that I have been denied Substantive Due Process. The US attorney even utilized the SEC's complete file in the criminal trial, which said evidence was obtained through the less severe civil discovery rules; an unfair (and unlawful) practice that Judge Rakoff recently ruled that he wants to avoid in the Galleon trial by forcing the SEC go to trial before the criminal trial. In the instant case the SEC and US Attorney were covertly (and unlawfully) investigating

CBL in a "joint" or "parallel" investigation, but utilizing the SEC as the "front" person in order to unlawfully gain all discovery for the criminal prosecution (see Exhibit "H"- AUSA Coleman's certification of a joint SEC/US Attorney investigation of CBL from the very beginning of the SEC case in November 1999). I respectfully submit that by the method in which the US Attorney and SEC conduct these investigations, white collar financial defendants are defrauded out of their constitutional rights by the denial of "honest services" in how they are treated in comparison to even terrorists.

Additionally, an important fact that your Honor may not be aware of is that Blech has filed suit against the Receiver and others in pursuit of CBL's alleged $73 million in capital. In the suit, Blech comes clean about the US Attorney's Office in the Southern District of New York "threatening and coerceing" him into **falsely** testifying against me. More specifically, Blech attests that Prosecutors Timothy Coleman and Jay Musoff sent him to a "three-week witness training" and told him "what to say, during which subjects he had to adjust his mood and what words he had to use" when testifying against me (see Exhibit "C", Blech lawsuit, section 3.8). They also threatened that if Blech did not co-operate, he would not see his family for a very long time (see Exhibit "C", section 3.8).

Blech also attests in the lawsuit that if Rittweger (and Brandon) violated the securities laws, he (Blech) had no knowledge of it (see Exhibit "C", section 3.4). This completely contradicts Blech's entire testimony about my alleged involvement in a conspiracy and fraud with him (but does coincide with Lynch's notes from the November/December, 1999 meetings with Blech where it shows that I was not involved- see also Exhibit "E"- Lynch's notes).

It is true, your Honor, that I was convicted at trial. However, that conviction was totally based upon the perjured testimony of Blech that was suborned by prosecutors Coleman and Musoff resulting in fabricated evidence. Blech admits completely to this in his lawsuit. And he gives us some insight in the lawsuit as to **why** he is now telling the truth; "now that he is no longer within the American jurisdiction" (see Exhibit "C", section 3.12). But Blech was severely misguided to think he was out from under the control of the prosecutor. Upon filing of the suit, the prosecutor knew that Blech's claims of prosecutorial misconduct would jeopardize the convictions in the instant case, so, they again threaten Blech, this time with violating his supervised release and throwing back in prison. And Blech again buckles to the pressure of the prosecutor, as he did in 2002. Blech again lies for the benefit of the prosecutor and Blech and his attorney write letters to Judge Koeltl (my trial judge) stating that the English translation of the lawsuit was "of very, very poor quality" and that the prosecutor did not threaten him and that all of his trial testimony was truthful (see Exhibit "I"- Mr. Riopelle's April 20, 2009 Letter to Judge Koeltl and Blech's April 20, 2009 Letter to Riopelle). However, what is very telling in Mr. Riopelle letter to Judge Koeltl is that he stating that, now that Blech has rectified the situation, his supervised release should not be violated (see Exhibit "I"- page 2 of Mr. Riopelle's Letter to Judge Koeltl). It is obvious from this statement by Blech's attorney, that the prosecutor threatened to violate his supervised release, which caused Blech to recant the allegations in his suit.

Upon hearing of this, I wrote a letter to Judge Koeltl (see Exhibit "J")(and to Attorney General, Eric Holder, see Exhibit "K") suggesting to Judge Koeltl that it was well within his powers to reverse the convictions or order an investigation into this matter. However, Judge Koeltl issued an opinion that my letter was only a letter and not a motion and required him to take no action (see Exhibit "L"- Judge Koeltl's Opinion). And that I could take up this issue on my §2255.

I apologize for going into great detail your Honor, however, I bring this to your attention because, being that the SEC's "Statement of Undisputed Facts" is based largely upon Blech's testimony at trial, which inter alia, has now been called into question by the allegations of prosecutorial misconduct in his lawsuit, I respectfully submit that all of the facts are not "undisputed" by any stretch of the imagination. In fact, the SEC's version of their alleged "undisputed facts" may <u>all</u> be false because they are based upon perjured testimony and fabricated evidence. That alone makes them "disputed" facts, and thus a Summary Judgment cannot be given.

Lastly, I think it important that your Honor also know the history of settlement attempts in this case. In 2001, prior to the prosecutor's threats to Blech and Blech agreeing to co-operate, I was told that I was not going to be indicted and that the SEC wanted to settle the matter with me. The proposed settlement by the SEC, in sum, included a disgorgement amount of roughly $4,000,000, which was based upon the maximum amount of my compensation from CBL and interest (contrary to $18 miilion they are now seeking). While the settlement agreement was being negotiated, Blech was extradicted to the US, threatened by the prosecutor (as outlined above), and I was indicted in February 2002. My attorney Andrew Tomback suggested that I still settle with the SEC as it was a part of a "global settlement" in the CBL case. More importanly, my assets were frozen, and I was already hit with a contempt filing by the SEC for paying my income taxes, plus, the settlement made $325,000 available for me to pay for counsel in the criminal case. In light of the fact that I was denied use of my own funds and being limited to $325,000 to pay for counsel, I felt not only that I was being denied my counsel of choice, but that I would be left without any counsel at all if I did not settle. Thus I felt forced into signing the settlement agreement, which I ultimately did sign and return. The arrangement also called for $3,400,000 (of the $4,000,000 settlement) to be paid by the insurers of CBL to the Receiver, leaving me with approximately $600,000 to pay personally. The SEC had already taken about $200,000 in cash, stocks and my 401 K account, thus I still had to pay approximately $400,000. As I noticed that the "Settlement Agreement" with the SEC only had a space available for my signature and not the SEC's, I asked for something stating that the matter was settled, prior to paying the additional $400,000. I did not trust the SEC at that point because I was told that I would not be indicted and then I was, so now I wanted something from them in writing saying this matter was settled based upon sending them $400,000, before sending them any money. I never received anything from the SEC, the SEC case was then put on hold because of the criminal case, so I never paid the $400,000.

Although the criminal trial was over in 2003, I have not heard from the SEC for the last 7 years until a few months ago, when Andrew Tomback wrote to me stating that he would represent me (in a limited capacity) to attempt to settle the SEC matter again. He told me that the SEC offered the following terms:

    a) that I would agree not to violate the securities laws,
    b) that I would agree to never work in the securities industry again,
    c) that the agreement would call for no fines or disgorgement, and
    d) that neither the SEC nor myself would admit or deny the charges in the settlement agreement.

I immediately and completely agreed to those terms. However, when I received the SEC's proposed settlement agreement and other documentation, they added several other clauses, that they wanted me to attest to, which I do not and would not agree with. After all, all that was represented to me were the four terms above that I had no problem agreeing to. Again I felt mistrust for the SEC as I did in 2001, this time

as if they were trying to sneak some other terms into the agreement. I immediately wrote to Mr. Tomback detailing my concerns and requested a new Agreement with only the terms they offered and that I already agreed with. Mr. Tomback wrote back to me and told that he understood my position, but that he could not spend the time needed to address all of these concerns. That was the last time I heard from anyone until I received the above captioned action.

I would still be willing to settle with the SEC, however, I would want it to be under the terms above that they originally offered, nothing more. Otherwise, I can only assume that this matter will go to trial. To that end, and in conjunction with my response that I will be filing, I respectfully request that your Honor order the following:

1) an extension of 120-days to file a proper response to the SEC's Motion for Summary Judgment (unless your Honor determines that the contents of this letter is sufficient to deny Summary Judgment now),
2) that the Receiver provide me a **detailed, line item by line item**, billing of his services as Receiver as soon as possible,
3) that the SEC provide me a copy of their entire CBL file, so that I may properly prepare my response and begin preparing for trial,
4) that the SEC return the $200,000 they took under the original proposed settlement that was never completed, so that I may hire counsel,
5) that the Receiver return the $3,400,000 paid to the Receiver on my behalf by the CBL Insurers for the settlement with the SEC that has not taken place. This will also be used to pay for counsel in this case and in my criminal appeal, in light of the allegations of prosecutorial misconduct made by Blech in his lawsuit.

In closing, I respectfully request that the Court make and distribute the necessary copies as I cannot afford to do so and have already been determined to be indigent in the District Court for the Southern District of New York. Thank you for your kind consideration in this matter.

Pursuant to 28 USC §1746, I Thomas Rittweger, do hereby certify, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge.

Respectfully submitted,

*[signature]*

Thomas Rittweger

EXHIBIT B

THOMAS RITTWEGER
Reg #: 51309-054
FCI Fort Dix- Camp
P.O. Box 2000
Fort Dix, NJ 08640

December 2, 2009

The Honorable Robert W. Sweet, U.S.D.J.
United States District Court
500 Pearl Street
New York, NY 10007

RE: Mr. Tomback's Motion to Withdraw as Counsel
   SEC v. Rittweger, 99-cv-11395

Dear Honorable Judge Sweet:

   I have received the above captioned Motion from my attorney Andrew Tomback of Milbank, Tweed, Hadly & McCloy. My objection to his request for withdrawl would depend on one issue which I raised in my November 12, 2009 request to you for an extension of time, which you so kindly granted a 90-day extension.

   The issue I refer to is the approximate $200,000 in funds taken from me by the SEC in 1999, which I could use to either pay Mr. Tomback or hire separate counsel. Additionally, there was a $3,400,000 payment made by the CBL Insurers to the Receiver pursuant to the proposed SEC Settlement with me, which said settlement has not occurred. I believe I am entitled to the return of those funds as well, being they were paid on my behalf pursuant to my proposed settlement with the SEC, which was not finalized. Thus, the SEC/Receiver received $3,400,000 in funds on my behalf that they are not entitled to and should be returned to me, so that I may pay for counsel in this matter.

   The Receiver testified for the prosecution in the parallel criminal case which at common law he could never do under Article III, **Blum v. State of Maryland**, 56 LRA 322, 94 Md 375, 51 A 26 (1902) (collecting English cases), and admitted his fees exceeded the loss. There would not have been any restitution <u>but for</u> his fees, and this "alleged" loss, which was the caused by the freeze of my assets and appointment of the Receiver, has denied me counsel of choice in both proceedings, <u>US v. Gonzales-Lopez</u>, 548 US 140 (2006), creating reversible error.

   I respectfully submit that once Congress codified restitution as a criminal penalty (18 USC §3663-64), there could be no such concurrent jurisdiction to use equity when there was a full and identical remedy at law that has become a criminal sanction that can no longer be administered in a court of equity (§16, Judiciary Act of 1789). I have attached a Memorandum of Law in support of my position for your consideration.

   Should the Court order that the funds that the SEC/Receiver took from me be returned, then I would have no objection to Mr. Tomback's withdrawl as I would have funds to pay for separate counsel should Mr. Tomback not want to represent me. However, should the funds not be returned, then I would object to Mr. Tomback's withdrawl as I would be left without counsel and I would be forced to litigate and/or appeal issues raised herein surrounding the parallel criminal/civil proceedings and

the $200,000 and $3,400,000. I respectfully submit that those funds were unlawfully taken from me at a time when there was no final determination in this civil matter nor a criminal conviction, and when the same remedy is codified as a criminal penalty. At this time however, the criminal matter has been adjudicated and my criminal restitution has been determined by the Court to have been paid in full. Thus, pursuant to the attached Memorandum of Law, the SEC is not entitled to a second bite at the apple (remedy at equity). Thus the $200,000 and $3,400,000 should be returned to me, as it is rightfully mine and so that I may pay for counsel to litigate the SEC matter and further appeal my criminal conviction and sentence.

I have enclosed some correspondence between Mr. Tomback, myself and the SEC pertaining to the $200,000 and the $3,400,000. I also respectfully refer you to my November 12 letter to your Honor. As you can see the settlement called for a payment of approximately $4,000,000, of which I was to pay $600,000 personally. The balance of $3,400,000 was to be paid to the Receivership by the Insurers for CBL. The SEC was giving me credit for the $200,000 of my personal assets they already had taken, which consisted of $72,500 in cash, 30,000 shares of BLTI stock and my 401K account. Even though my settlement with the SEC was never finalized (for reasons explained in my November 12 letter), the CBL Insurers did settle the matter with the Receiver, thus I believe the $3,400,000 payment would have been made to the Receiver.

Your Honor, as you know, I have always maintained my innocence in this matter and continue to do so. Mr. Blech's lawsuit, of which I have previously provided you a copy, definitively shows that Mr. Blech recanted his testimony with regard to my involvement in any conspiracy with him. Mr. Lynch's notes and trial testimony (also previously provided) also supports my innocense. Blech's lawsuit also explicited states that the US Attorney in the criminal case committed misconduct, which I posit, should require a reversal of my conviction; issues I will be addressing with the Court in the next few months.

What I respectfully request of your Honor is to be fair in considering all of these factors and to rule in accordance with the law and not just in favor of the government. You have _always_ been fair to me in this case and I implore you to continue to do so now.

I respectfully request that you order that the $200,000 and $3,400,000 be returned to me so that I may stand a **real chance** of challenging the SEC allegations and further litigate the issues raised herein. Additionally, I respectfully request that you order discovery, including but not limited to, settlement agreements between all parties in this matter, a detailed listing of all payments made between parties including the SEC, Receiver, CBL Insurers, etc, all correspondence between all parties, including e-mail, memos, letters, etc., and a detailed listing of the Receiver's billings to the Court, line-item-by-line-item.

I am also requesting any and all communications between the US Attorney's Office and SEC. I have just cause to believe that the SEC and US Attorney's Office were simultaneously investigating me at the end of 1999, but only the SEC made itself known in that investigation and kept the US Attorney's invovlement secret and covert in order to unlawfully obtain discovery under the less severe civil discovery rules and then use that information in the criminal prosecution. The US Attorney admitted to a "joint" SEC/US Attorney investigation in a certification filed with the Swiss Authorities (see attached). I respectfully submit this violates my Due Process rights and Article III by using chancery to circumvent a court at law prohibited under Article III. It further circumvents the Grand Jury eliminating the Due Process and subpoena powers of the Grand

Jury replacing them with equity, see <u>Hutchenson v. US</u>, 369 US 599, 608 n.13 (1962); see also <u>US v. Saline Bank of Virginia,</u> 26 US 100 (1828), which stood for the proposition that chancery could never gather evidence for a parallel criminal prosecution.

Further, I respectfully request that you <u>deny</u> Mr. Tomback's Motion <u>for</u> <u>the</u> <u>time</u> <u>being</u> until such time as the above issues have been resolved.

Lastly, I respectfully request that the Court liberally construe this letter, and the issues raised therein, as a Motion in lieu of a more formal Motion. In the event this Motion is denied, then I would respectfully request that the case be stayed pending an interlocatory appeal of the issues raised above and that this letter also serve as a Notice of Appeal, in that Fort Dix <u>does</u> <u>not</u> consider this Court's mail to be "legal mail" and it could takes several weeks to receive a decision through the regular mail system, thus the time for a Notice of Appeal to be filed may expire by the time I receive the Court's decision.

Pursuant to 28 USC §1746, I, Thomas Rittweger, do hereby certify, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge.

Respectfully submitted,

*/s/ Thomas Rittweger*

Thomas Rittweger, Pro Se

## MEMORANDUM OF LAW CONCERNING MULTIPLE PROSECUTIONS

A)  ONCE CONGRESS CODIFIED RESTITUTION AS A CRIMINAL PENALTY, THERE COULD BE NO SUCH CONCURRENT JURISDICTION TO USE EQUITY WHEN THERE WAS A FULL AND IDENTICAL REMEDY AT LAW THAT HAS BECOME A CRIMINAL SANCTION THAT CAN NO LONGER BE ADMINISTERED IN A COURT OF EQUITY.

It is fundamental jurisdiction under **Article III** that courts of equity <u>cannot</u> invade parallel courts at law. "Any jurisdiction over criminal matters that the English court of chancery ever had became obsolete long ago," <u>In re Sawyer</u> 124 US 200, 209-210 (1888). "A court does not have the power by judicial fiat, to extend its jurisdiction over matters beyond the scope of the authority granted to it by its creators, "<u>Stoll v. Gottlieb</u>, 305 US 165, 171 (1938).

Judiciary Act of 1789, §16:

> "And be it further enacted, that suits in equity shall not be sustained in either of the courts of the United States, in any case where plain, adequate and complete remedy may be had at law."

"It has been held, it is true, that orders by a court having <u>no</u> jurisdiction to make them may be disregarded without liability," <u>US v. Shipp</u>, 203 US 563, 573 (1906).

Once Congress codified "restitution" as a criminal penalty, the SEC could no longer seek the very same relief in parallel using equity. They may be able to seek "restitution" or "disgorgement" (which are the same under Article III, see below), as long as there is <u>no</u> parallel criminal case seeking the same criminal penalty. The SEC does not have any statutory authority to alter a criminal penalty:

> "Whatever may have been the powers of the courts of the United States before the statute, those powers are now regulated by statute."

<u>Continental Casualty Co. v. US</u>, 314 US 527, 533 (1942).

"[F]ederal common law applies '[u]ntil the field has been made the subject of comprehensive legislation or authorized administrative standards," <u>Milwaukee v. Illinois</u> 451 US 301, 314 (1981). "[W]here a statute creates a right and provides a special remedy, that remedy is exclusive," <u>US v. Babcock</u>, 250 US 328, 331 (1919). "[W]hen a statute limits a thing to be done in a particular mode, it includes a negative of any other mode," <u>Christensen v. Harris County</u>, 529 US 576, 583 (2000).

> "[F]ederal common law... develop[s] as a necessary expedient when Congress has not spoken to a particular issue [yet]... is subject to the paramount authority of Congress. [Once]... <u>Congress has enacted a new statute... that fact makes all the difference</u>."

US v. Billy Jo Lara, 541 US 193, 158 Led2d 420, 433 (2004)(emphasis added).

Once Congress has codified "restitution" as a criminal penalty as it did in 1996, and with the Sentencing Reform Act of 1984, that ended any claimed parallel restitution (or disgorgement) remedies by any agency. Since restitution is a criminal penalty, "the punishment or the remedy can be only that which the statute prescribes," Wilder Mfg Co. v. Corn Products Co., 236 US 165, 174-75 (1915)(collecting cases). "Criminal law cannot be administered in a court of equity," Mugler v. Kansas, 123 US 623 (1887).

### B) RITTWEGER WAS DENIED A FAIR TRIBUNAL BY THE USURPATION OF THE RECEIVERSHIP THAT VIOLATED EVEN HIS BRADY RIGHTS.

The intended abuse of the equity receiver was in itself illegal and without any jurisdiction whatsoever. All equitable remedies are confined to those in practice in 1789. Because CBL was a foreign company and the asset under the credit facility provided to CBL customers were unsecured, not merely was there no equitable jurisdiction to seize the assets denying trial by jury, Grupo Mexicano v. Alliance Bond Fund, 527 US 308, 318-19 (1999), but there was no equitable jurisdiction to install a receiver. "[A] creditor who seeks the appointment of receivers must reduce his claim to judgment and exhaust his remedy at law," Shapiro v. Wilgus, 287 US 348, 355 (1932).

An equity receiver is no different than a law clerk, for he is "an officer of the court which appoints him... The property is his hands is not, in a legal sense, in his possession. It is in the possession of the court," Taylor v. Sternberg, 293 US 470, 472 (1935). It "is the court itself which has care of the property in dispute," Atlantic Trust Co. v. Chapman, 208 US 360, 370-71 (1908). Where a receiver's report was to be released to the press, the court delegated that duty to the receiver and that was reversed stating "the district court should make its on redaction, supported by specific findings, after careful review of all claims...," US v. Amodeo, 44 F3d 141, 147-48 (2d Cir. 1995). In the instant case, court records confirm that the receiver supplied evidence to the US Attorney in this case. In fact, the receiver was the very first witness to testify for the prosecution in the criminal case.

At common law, chancery could never assist a criminal prosecution for "the ancient equity rule [became] that a court of equity will not order discovery that may subject a party to criminal prosecution," Hutchenson v. US, 369 US 599, 608 n.13 (1962); see also US v. Saline Bank of Virginia, 26 US 100 (1828). Never at common law could a receiver ever gather information for a parallel criminal prosecution. There is no

such equitable jurisdiction whatsoever, Blum v. State of Maryland 56 LRA 322, 94 Md 375, 51 A 26 (1902)(collecting English cases). Plainly stated, "the district court did not have the authority under generalized equity powers to implement the remedy it imposed," In re Owens Corning, 419 F3d 195, 209 n.14 (3rd Cir 2005).

> "Now it is elementary knowledge that one cardinal rule of the court
> of chancery is never to decree a discovery which might tend to
> convict the party of a crime, or to forfeit his property."

Boyd v. US, 116 US, 631-32 (1886).

There can be no dispute that since equity jurisdiction and remedies are confined to the known practices as they stood in 1789, Grupo Mexicano, 527 US 318-19, then it was impossible for the US Attorney and SEC to have usurped the receivership, violate Rittweger's rights (including Brady) and aid the criminal prosecution.

### C) A DISGORGEMENT ORDER HAS ALREADY BEEN ESTABLISHED TO BE MERELY AN ORDER FOR RESTITUTION BY THE SUPREME COURT SINCE COURTS CANNOT CREATE NEW REMEDIES IN EQUITY AND ONLY RESTITUTION EXISTED IN 1789.

Labels have **never** been available to impose the same remedy by changing the label to confuse the matter. Federal courts are "guided by the historic distinction between law and equity... not by the name given to remedies...," Stratton v. St. Louis So West, 284 US 530, 534 (1932). "[W]here a particular remedy is given by law, and that remedy bounded and circumscribed by particular rules, it would be very improper for this court (chancery) to take it up where the law leaves it, and extend it further than the law allows," Thompson v. Allen County, 115 US 550, 555 (1885). The "authorities are too abundant to admit a question, that there is no chancery jurisdiciton where there is an adequate remedy at law," Id./at 554.

When the government attempted to argue in the Supreme Court that "disgorgement" was a separate remedy from "restitution" in equity, that was slapped down. There was **only** one remedy in 1789 and that was **Restitution**-- nothing else:

> "Such an action [for disgorgement] is a remedy only for restitution--
> a more limited form of penalty than a civil fine."

Tull v. US, 481 US 412, 424 (1987).

It has been consistantly held that "labels" do not create new remedies. Even if both Double Jeopardy labels cannot prevent review of the substance, US v. Halper, 490 US 435 (1989); Hudson v. US, 522 US 93 (1997). For this reason, "the labels affixed

wither to the proceeding or to the relief imposed... are not controlling and will not be allowed to defeat the applicable protection of federal constitutional law," Hicks v. Feiock, 485 US 624, 631 (1988).

There was no such thing as a "disgorgement" order in 1789. There was only one such remedy and that was "restitution" that could never be imposed without a jury trial to establish the title of ownership. As Sir William Blacktone made clear, "by commom law there was no restitution of goods upon indictment," 4 Blackstone, page 355-56. Thus granting the SEC's Motion for Summary Judgment would not only violate the law by allowing remedies at both law (the criminal case) and equity (the SEC civil case), but it would also deny my right to a trial by jury in the SEC matter due to the substantial discrepancy in the so-called "facts" alleged by the SEC.

## CONCLUSION

Rittweger was indicted, tried, convicted and sentenced in the criminal case, based upon the same set of facts and circumstances that the SEC is now trying to litigate in its civil case. In addition to his 135-month sentence, restitution of $18,128,599 was imposed as a criminal penalty, the very same $18,128,599 the SEC now seeks as civil disgorgement. Based on all of the above, I respectfully submit that there has already been a remedy at law, thus a remedy at equity cannot be had.

Pursuant to 28 USC §1746, I, Thomas Rittweger, do hereby certify, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge.

Respectfully Submitted,

Dated: December 2, 2009

Thomas Rittweger, Pro Se