UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

SECURITIES & EXCHANGE COMMISSION,

               Plaintiff,              99 Civ. 11395

    -against-                      OPINION

CREDIT BANCORP LTD, et al,

               Defendants.

------------------------------------X

A P P E A R A N C E S:

> Attorney for Plaintiff
>
> SECURITIES AND EXCHANGE COMMISSION
> 50 South Main
> Suite 500
> Salt Lake City, UT 84144
> By:  Thomas M. Melton, Esq.
>
> Attorney for Defendant
>
> THOMAS M. RITTWEGER
> Pro Se
> FCI Fort Dix-Camp
> P.O. Box 2000
> Fort Dix, NJ 08640
>
> Attorney for Receiver
>
> MORRISON & FOERSTER LLP
> 1290 Avenue of the Americas
> New York, NY 10104
> By:  Carl H. Loewenson, Jr., Esq.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/8/10

**Sweet, D.J.,**

Defendant Thomas Rittweger ("Rittweger" or the "Defendant") has moved to unfreeze assets and release funds to which he lays claim so that he may hire an attorney to defend against the accusations of securities fraud by the Securities and Exchange Commission (the "SEC"). Specifically he seeks the release of $200,000 to hire counsel, and $3.4 million paid on his behalf by insurers of his former employer, Credit Bancorp, (the "Insurers") to Carl H. Loewenson, Jr., the court-appointed receiver for Credit Bancorp and all its subsidiaries ("Loewenson" or the "Receiver") as part of a proposed but unfinalized settlement agreement between Rittweger and the SEC, to hire counsel and defend against the accusations.  He also requests that the SEC provide a copy of their case file in the underlying case, SEC v. Credit Bancorp, No. 99 Civ. 11395 (RWS), so that he may properly prepare his response to the pending motion for summary judgment and begin preparing for trial.  Finally he asks that the Receiver provide a detailed billing of his services for the complete term of his service.  For the reasons set forth below, his motions are denied.

## FACTS AND PRIOR PROCEEDINGS

1

The SEC filed the underlying action for securities fraud on November 17, 1999. A Temporary Restraining Order, Asset Freeze and Order to Show Cause were issued on the same day. The Order was extended on November 23, 1999.

On January 18, 2000, Rittweger's counsel, Milbank, Tweed, Hadley & McCloy, LLP ("Rittweger's counsel"), wrote a letter to the Court in which he requested permission to appear and participate in the consideration of the appointment of a Receiver for Credit Bancorp. See SEC's Mem. in Opp'n, Ex. 1. In that letter, Rittweger's counsel at the time informed the Court that "I have been working with Mr. Rittweger to prepare a request that the Court release certain of his now-frozen personal funds for purposes of paying his personal legal fees. . . ." However, that was request was never made.

On January 24, 2000, Loewenson was appointed Receiver for Credit Bancorp and all its subsidiaries and affiliated entities. Pursuant to the court order, the Receiver was granted control of Credit Bancorp's assets, files, and records.

On March 17, 2000, Rittweger's counsel wrote a letter to the Receiver regarding several violations of the court-imposed asset freeze. See SEC's Mem. in Opp'n, Ex. 2. In that letter Rittweger acknowledges the asset freeze but made no attempt to have it set aside or modified for the payment of legal expenses.

On April 6, 2000, the Receiver filed a Declaration regarding violations of the asset freeze, and including as attachments correspondence with Rittweger's counsel. See SEC's Mem. in Opp'n, Ex. 3.

On April 28, 2000, the scope of the asset freeze with respect to Rittweger was clarified by court order, reaffirming that Rittweger's assets were previously frozen by orders dated November 23, 2000 and January 21, 2000. The Court then determined that the scope of the asset freeze permitted Rittweger to collect reasonable and necessary legal fees pursuant to the applicable insurance policies. Rittweger consented to the payment of these fees directly to his counsel and did not request the modification of the freeze to pay legal expenses from any source other than the insurance policy proceeds.

On January 21, 2002, Rittweger was indicted in the Southern District of New York on criminal counts of Conspiracy to Defraud the United States, Securities Fraud, Wire Fraud, and Racketeering.

On March 15, 2002, an Order was entered approving a settlement between and Credit Bancorp, the Insurers, and the Receiver, (the "Insurer Settlement Agreement" or the "Agreement") which included the stipulation that certain sums would be paid to Rittweger's counsel.

On June 26, 2003, in the parallel criminal case, Rittweger was found guilty of four counts of Conspiracy to Defraud the United States, two counts of Securities Fraud, two counts of Wire Fraud, and two counts of Racketeering.

On June 28, 2005, in the parallel criminal case, Rittweger received a sentence of 135 months and was ordered to pay restitution of $18,128,599.40 and a special assessment of $1,300. He has been imprisoned since January 27, 2006.

On November 2, 2009, the SEC moved for summary judgment against Rittweger.

On November 5, 2009, Rittweger's counsel moved to withdraw, and the motion was granted on November 19.

The instant motion was marked fully submitted on February 10, 2010.

## I.   DISCUSSION

### A. The Freezing of Rittweger's Accounts Was Proper

To obtain an asset freeze, the SEC must demonstrate prima facie evidence that a violation of the securities laws has occurred.  See Sec. & Exch. Comm'n v. Unifund SAL, 910 F.2d 1028, 1037 (2d Cir. 1990).  A freeze order may be obtained even without showing a likelihood of future violations.  See Unifund, 910 F.2d at 1041 (citing SEC v. Commonwealth Chem. Sec., 574 F.2d 90, 103 n.13 (2d Cir. 1978)).  The Commission's burden when seeking an asset freeze is lower than its burden when seeking a temporary restraining order or preliminary injunction against statutory violations because such injunctive relief raises

the specter of future liability for contempt while an asset
freeze only preserves the status quo. See Unifund, 910
F.2d at 1041. When the SEC has proven its prima facie case
of securities violations, a preliminary injunction may
issue. Sec. & Exch. Comm'n v. Current Fin. Servs., Inc.,
783 F. Supp. 1441, 1444, 1446 (D.D.C. 1992); Sec. & Exch.
Comm'n v. Vaskevitch, 657 F. Supp. 312, 314, 316 (S.D.N.Y.
1987). See also Sherleigh Assocs., LLC v. Windmere-Durable
Holdings, Inc., 178 F. Supp. 2d 1255, 1279 (S.D.Fla 2000).

The SEC is not an ordinary litigant, but a
statutory guardian charged with safeguarding the public
interest in enforcing the securities laws. By making a
showing required by statute that the defendant "'is engaged
or about to engage' in illegal acts, the [SEC] is seeking
to protect the public interest, and 'the standards of the
public interest, not the requirements of private
litigation, measure the propriety and need for injunctive
relief.'" SEC v. Managements Dynamics, Inc., 515 F.2d 801,
808-09 (2d Cir. 1975) (quoting Hecht Co. v. Bowles, 321
U.S. 321, 331 (1944)).

The asset freeze in this case is necessary to
avoid further depletion of funds pending a final judgment.

6

See, e.g., Commodity Futures Trading Co. v. Am. Metals
Exch. Corp., 775 F. Supp. 767, 788 (D.N.J. 1991), aff'd in
part and vacated in part on other grounds, 991 F.2d 71 (3d
Cir. 1993)(where value of frozen assets is "well short of
the amount of losses suffered" by investors, "it would be
inequitable to further deplete the receiverships estate to
pay [defendant's] attorneys' fees or additional living
expenses"); United States v. Cannistraro, 694 F. Supp. 62,
71 (D.N.J. 1988) aff'd in part and vacated in part on other
grounds, 871 F.2d 1210 (3d Cir. 1989); Sec. & Exch. Comm'n
v. Vaskevitch, 657 F. Supp. 312, 315 (S.D.N.Y. 1987). See
also International Controls Corp. v. Vesco, 490 F.2d 1334,
1347 (2d Cir. 1974), cert. denied, 417 U.S. 932 (1974)
("[A]n asset freeze may be appropriate to assure
compensation to those who are victims of a securities
fraud."). Despite numerous opportunities, Rittweger has
not, until this time, contested the imposition of the asset
freeze in this case or taken any steps to challenges the
evidence presented against him.

A freeze is particularly warranted where the
defendant's alleged conduct involves fraud. Sec. & Exch.
Comm'n v. Manor Nursing Ctrs., Inc., 458 F.2d 1082, 1106
(2d Cir. 1972) ("Because of the fraudulent nature of the

7

appellants' violations, the court could not be assured that appellants would not waste their assets prior to refunding public investors' money.") See also Sec. & Exch. Comm'n v. American Board of Trade, Inc., 645 F. Supp. 1047, 1051-52 (S.D.N.Y. 1986), modified on other grounds, 830 F.2d 431 (2d Cir. 1987), cert. denied, 485 U.S. 938 (1988)(imposing freeze to prevent depletion of assets).

It has already determined in earlier proceedings that the evidence set forth by the SEC was sufficient to warrant a freeze. Rittweger raises no valid independent evidentiary basis for lifting it, nor for paying his attorneys' fees using funds paid by the Insurers to the Receiver as part of their settlement. Moreover the Court is authorized to preserve assets to assure Rittweger's payment of disgorgement and civil penalties, should those be warranted. Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills, 321 F.3d 878, 882 n.4 (9th Cir. 2003)(dicta); CSC Holdings, Inc. v. Redisi, 309 F.3d 988, 996 (7th Cir. 2002); United States ex rel Rahman v. Oncology Assocs., P.C., 198 F.3d 489, 501-02 (4th Cir. 1999).

### B. Rittweger is not Entitled to the Funds He Seeks

###### i.    As a Matter of Law, Rittweger May Not Use Frozen Funds to Pay for Attorneys' Fees

Neither civil nor criminal defendants have the right to use frozen investor funds to pay their counsel. When analyzing a criminal defendant's right to use frozen funds to pay counsel, the Supreme Court has explained that "a robbery suspect, for example, has no Sixth Amendment right to use funds he has stolen from a bank to retain an attorney to defend him if he is apprehended. The money, though in his possession, is not rightfully his. . . ." Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 626 (1989). The Court went on to say that a defendant does not have the right to use the frozen funds for attorneys' fees, even if those funds are the only way that a defendant would be able to retain the attorney of his choice. Id. See also Sec. & Exch. Comm'n v. Coates, No. 94 Civ. 5361, 1994 U.S. Dist. LEXIS 11787, at *8 (S.D.N.Y. August 19, 1994) ("A defendant is not entitled to foot his legal bill with funds that are tainted by his fraud."); Sec. & Exch. Comm'n v. Comcoa, Ltd., 887 F. Supp. 1521, 1524 (S.D. Fla. 1995)("In imposing a freeze of assets there

is no requirement that the court exempt sufficient assets
for the payment of legal fees.").

Furthermore, Rittweger has made no showing that
the funds he seeks are not part of the securities fraud.
See Sec. & Exch. Comm'n v. Cherif, 933 F.2d 403, 416-17
(7th Cir. 1991), cert. denied 502 U.S. 1071 (1992) (civil
defendant's request to unfreeze funds to pay attorneys fees
denied when defendant would not submit an accounting
revealing whether any portion of the funds were not part of
the securities fraud).[1]  To succeed on a motion to modify
freeze to permit payment of attorneys' fees and other
expenses, defendant "must establish that such a
modification is in the interest of defrauded investors."
Sec. & Exch. Comm'n v. Grossman, 887 F. Supp. 649, 661
(S.D.N.Y. 1995), aff'd sub. nom. Sec. & Exch. Comm'n v.
Estate of Hirshberg, 101 F.3d 109 (2d Cir. 1996).

### ii. Rittweger Is Not Entitled to Use Evidence of Settlement Negotiations in Support of His Motion

---

[1] "Because this is a civil case, the arguments of [defendants] are weaker
than those of Caplin & Drysdale . . . . A criminal defendant has no
Sixth Amendment right to spend another person's money for services
rendered by an attorney. It would be anomalous to hold that a civil
litigant has any superior right to counsel than one who stands accused
of a crime." Id. at 417. (internal citations and quotation marks
omitted)

10

Rittweger's claim to the $200,000 of the frozen funds is not supported by his claim that the Commission has relinquished any claim to those funds through its posture in settlement. Rittweger claims, "the SEC had already conceded that those funds are mine and I would get credit for the $200,000 against any settlement amount." See Letter from Thomas Rittweger to the Court, January 27, 2010.

Evidence of settlement or settlement negotiations is inadmissible to prove liability for, or invalidity of, a claim. Fed. R. Evid. 408; Rein v. Socialist People's Libyan Arab Jamahiriya, 568 F.3d 345, 351 (2d Cir. 2009); ("[Rule 408] essentially forbids a court from basing adverse findings on a party's concessions in settlement negotiations."); see also Sec. & Exch. Comm'n v. Church Extension of the Church of God, 429 F. Supp. 2d 1045, 1051 n.2 (S.D. Ind. 2005); Sec. & Exch. Comm'n v. Downe, 969 F. Supp. 149, 159 n.8 (S.D.N.Y. 1997). The rule applies regardless of which party seeks to admit the evidence. Pierce v. F.R. Tripler & Co., 955 F. 2d 820, 828 (2d Cir. 1992) (citing with approval Kennon v. Slipstreamer, Inc., 794 F. 2d at 1069). Rule 408 has in mind the "promotion of

11

public policy favoring the compromise and settlement of
disputes" that admitting such evidence would jeopardize.
Fed. R. Evid. 408, Notes of Advisory Ctte on Rules.
Rittweger may not use such evidence to secure the funds he
seeks to unfreeze.

### iii. **Rittweger Does Not Lay Valid Claim to the Funds He Seeks**

Rittweger claims that the SEC "and/or court-
appointed receiver is currently holding approximately
$200,000 of [his] funds," Rittweger Aff. at 1, which he
explains consists of "$72,500 in cash, 30,000 shares of
BLTI [Biolase Technology Inc.] stock and [his] 401k
account." Id. at 2.  The Receiver understands that
Rittweger refers in part to cash and securities formerly
held in Account No. 6YC-006665 held in an account in the
name of Credit Bancorp Limited at Commerce Capital Markets
in Cherry Hill, New Jersey.  See Receiver's Mem. in Opp'n
at 2.  Rittweger provides no evidence to support a claim
that these assets, held in the name of Credit Bancorp,
actually belonged to him.  According to sworn affidavits
submitted by the Receiver, virtually all cash balances held
in that account were the result of sales of securities made
after this Court ordered a freeze of Credit Bancorp's

12

accounts.  See Decl. of James M. Bergin ¶¶ 2-4.  The
Biolase shares in question were first deposited in the
Commerce Capital account on November 22, 1999, also after
the asset freeze went into effect.  Id. ¶ 6.  The
Receiver's records indicate that these shares were derived
from a larger deposit of Biolase shares made by former
Credit Bancorp customer Inter Banc Mortgage Service, Inc.
Id. ¶¶ 5-7.  Rittweger provides no evidence to the
contrary, nor does he provide any showing that the funds in
his 401k account were obtained independent of the Credit
Bancorp fraud.

          Rittweger further contends that he is entitled to
"some $3,400,000 paid on behalf of Mr. Rittweger by [Credit
Bancorp's insurers]."  Def's Mem. at 1. Rittweger's
argument appears to be based on Paragraph 4 of the Insurer
Settlement Agreement.  Paragraph 4 of that Agreement
provides as follows:

          The  Parties  agree  that  if  Defendants  Thomas
          Rittweger   or   Douglas   Brandon   provide   the
          Receiver, [Credit Bancorp] and Insurers with the
          general release within ten (10) days of the date
          of  this  Agreement  with  respect  to  the  Subject
          Insurance  Policies  and  all  matters  related  to  the
          SEC  Enforcement  Proceedings,  a  portion  of  the
          Settlement  Amount  may  be  used  by  such  releasing
          Defendant  or  Defendants,  to  pay  any  disgorgement

13

> required by a settlement with the SEC in the SEC
> Enforcement Proceeding.    No portion of the
> Settlement Amount will be used to pay fines or
> penalties.

Insurer's Settlement Agreement, ¶ 4. The SEC confirms that

it has not entered into a settlement with Rittweger (nor

does Rittweger contest this), a necessary condition

precedent to any claim that Rittweger might have under

Paragraph 4 of the Insurer Settlement Agreement. Even if

that condition had been satisfied, at most the Insurer

Settlement Agreement would have permitted a portion of the

insurers' settlement payment to serve as a credit against

any disgorgement obligation that Rittweger agreed to as

part of a settlement with the SEC. Nothing in Paragraph 4

provides any basis for Rittweger to seek payment of

attorney's fees to defend against the SEC's claims.

The order dated March 15, 2002, makes it clear

that Rittweger and the other defendants had the opportunity

to review the settlement agreement. They were also

permitted to present their arguments. There is no room for

Rittweger's interpretation of the settlement agreement.

## B. **Rittweger's Other Claims for Relief Are Untimely**

14

### i.   **Rittweger is not Entitled to Discovery of the SEC's Case File for Credit Bancorp**

Rittweger also requests that the SEC provide a copy of its entire file relating to the securities fraud suit against Credit Bancorp.

To the extent that his motion and letters to the court dated November 12 and December 2, 2009, and January 27, 2010, the Court is guided by the principles embodied in Rule 56(f), Fed. R. Civ. P.  This Rule permits a court to deny a motion for summary judgment or grant a continuance "[i]f a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition."  Fed. R. Civ. P. 56(f).  To defeat or delay an award of summary judgment on this ground, the part opposing the motion must "submit an affidavit showing (1) what facts are sought to resist the motion and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort the affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts."  JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dec. & Trade Servs., Inc., 386 F. Supp. 2d 461, 478 (S.D.N.Y. 2005) (citing Gurary v. Winehouse, 190 F.3d 37, 43 (2d Cir.

15

1999)); see also Aetna Cas. & Sur. Co. v. Aniero Concrete
Co., Inc., 404 F.3d 566, 606 (2d Cir. 2005).  When the
discovery sought is irrelevant to the issues before the
Court, relief under 56(f) will be denied.  See Contemporary
Mission, Inc. v. N.Y. Times Co., 842 F.2d 612, 622 (2d Cir.
1988).

        Rittweger fails to meet this standard.  First, he
has not demonstrated with any specificity the facts he
hopes to elicit through further discovery.  He indicates
that his co-defendant and a cooperating witness for the
Government is alleging prosecutorial misconduct, but those
allegations cannot be considered facts at this stage.  They
therefore do not merit discovery.  Nor does Rittweger
specify how additional discovery will lead to any
additional facts.  He does not specify any witnesses in
possession of those facts or documents that have not
already been produced or available in the case.  He makes
no showing of what efforts he or his counsel made to obtain
that discovery and no showing of why he was unsuccessful in
obtaining that discovery.

        Rittweger has had ample time to collect the
evidence in order to oppose the summary judgment.

                              16

Rittweger has never filed a request for the production of documents in the ten year history of this case, and he has done no discovery to date. The denial of a Fed. R. Civ. P. 56(f) request does not constitute an abuse of discretion where the movant has failed to diligently pursue discovery in the past. Byrd v. Guess, 137 F.3d 1126, 1135 (9th Cir. 1998); Nidds v. Schindler Elevator Corp., 113 F.3d 912, 921 (9th Cir. 1997). See also Sec. & Exch. Comm'n v. Hickey, No. 94-CV-0336, 2000 U.S. Dist. LEXIS 2361, at *3-4 (N.D. Ca. June 29, 2006). The failure to diligently pursue discovery, combined with the failure of Rittweger to identify why additional discovery is needed and how additional discovery will likely create a genuine issue of material fact, is fatal to Rittweger's argument. "A court plainly has discretion to reject a request for discovery if the evidence sought would be cumulative or if the request is based only on speculation as to what potentially could be discovered," Jasco Tools, Inc. v. Dana Corp, 574 F.3d 129, 148-49 (2d Cir. 2009) (internal citations and quotation marks omitted). Rittweger's request for the SEC's case file is therefore denied.

## ii. Rittweger's Request for a Detailed Accounting from the Receiver is Redundant

17

Rittweger has also requested a "detailed line-item-by-line-item billing" of his services for the complete term of his service. Def's Mem. at 3.  There are no grounds which justify the granting of this request.  That accounting has been done at every juncture in this case, and the Receiver's requests for fees have been reviewed and approved by this Court.  Rittweger does not attempt to justify his claim for this accounting.

The Receiver routinely provides the Court and the parties with a periodic "Declaration and Report of Receiver" summarizing the work performed by the Receiver and his counsel, and including copies of invoices for all services rendered.  These reports have been publicly available at all times, and Rittweger is not entitled to burden the Receivership estate with the costs of producing these materials again.

In any event, there is no foundation for Rittweger's request.  As with the request for the SEC case file, even if Rittweger's request for a detailed accounting were treated as a request pursuant to Fed. R. Civ. P. 56(f), he has failed to make a showing sufficient to justify the discovery he seeks to oppose the SEC's motion

for summary judgment. By the terms of the four-part Gurary v. Winehouse test used to determine when discovered is appropriate, see supra Section III.B., Rittweger does not attempt to satisfy the requirements that he demonstrate and explain past efforts to obtain the information he seeks from the Receiver; he has never previously sought to take discovery from Loewenson. As to the first two requirements, Rittweger's argues that "the Receiver's fees were $28 million" and the remaining "loss to customers was $12 million (after Receiver's fees)", with the result that "there was no loss to [Credit Bancorp] customers at the time the SEC lawsuit was instituted," Rittweger Aff. Ex. A. at 1. These arguments contradict the losses that Credit Bancorp suffered, as documented by the admissions of Rittweger's co-defendant Richard Blech, and through extensive evidentiary submissions of the SEC and the Receiver. Receiver's Mem. in Opp'n at 7. Rittweger has also not begun to show how the requested line by line description of the activities of the Receiver and his counsel would be relevant to Rittweger's opposition to the SEC's motion for summary judgment. Because Rittweger has failed to satisfy the prerequisites of a request for relief under Rule 56(f), his requests for discovery are denied.

19

## CONCLUSION

Based on the authorities and conclusions set forth above, the Defendant's motions are denied.  The SEC's motion for summary judgment will be heard on submission, without oral argument, on April 14, 2010.

It is so ordered.

New York, NY
March _4_ , 2010

ROBERT W. SWEET
U.S.D.J.