UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

SECURITIES AND EXCHANGE COMMISSION,

                 Plaintiff,        99 Civ. 11395

   -against-                     OPINION

CREDIT BANCORP, LTD., CREDIT BANCORP,
INC., RICHARD JONATHAN BLECH, THOMAS
MICHAEL RITTWEGER, AND DOUGLAS C.
BRANDON,

                 Defendants.

------------------------------------------X

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: 2/10/11

A P P E A R A N C E S:

        <u>Attorneys for Plaintiff</u>

        SECURITIES AND EXCHANGE COMMISSION
        15 West South Temple, Suite 1800
        Salt Lake City, UT  84101
        By:  Thomas M. Melton, Esq.

        SECURITIES AND EXCHANGE COMMISSION
        233 Broadway
        New York, NY  10279
        By:  Robert Blackburn, Esq.

        <u>Pro Se</u>

        THOMAS RITTWEGER
        Reg #: 51309-054
        FCI Fort Dix Camp
        P.O. Box 2000
        Fort Dix, NJ  08640

Sweet, D.J.

Plaintiff the Securities and Exchange Commission ("SEC") moved on October 10, 2010 for a final judgment against defendant Thomas M. Rittweger ("Rittweger"), pro se. The motion was opposed by Rittweger and is granted as set forth below. Rittweger has moved to enjoin the SEC administrative proceeding brought against him. That application is denied.

**The SEC's Motion for Final Judgment Is Granted**

The remedies sought by the SEC are appropriate. See SEC v. Credit Bancorp, Ltd., No. 99 Civ. 11395, 2010 U.S. Dist. LEXIS 94885, at *32-37 (S.D.N.Y. Sept. 10, 2010) (finding remedies sought by SEC in this matter, including an injunction against future violations of the securities laws, disgorgement, and a civil monetary penalty, to be appropriate). "Upon a finding that federal securities laws have been violated, the district court has broad 'equitable power to fashion appropriate remedies, including ordering that culpable defendants disgorge their profits.'" SEC v. Bocchino, No. 98 Civ. 7525, 2002 U.S.

Dist. LEXIS 22047, at *4 (S.D.N.Y. Nov. 8, 2002) (quoting SEC v. First Jersey Sec., Inc., 101 F.3d 1450, 1474 (2d Cir. 1996)).

Rittweger has been ordered to pay disgorgement and prejudgment interest as described in the SEC's previous Memorandum of Points and Authorities in Support of Motion for Summary Judgment. The imposition of disgorgement was qualified "[t]o the extent that Rittweger has paid or pays the amount owed in restitution, the amount of his disgorgement obligation may be offset accordingly." Credit Bancorp, 2010 U.S. Dist. LEXIS 94885 at *34. Although Rittweger has not made any restitution, restitution in the criminal action was deemed satisfied based upon the Receiver's efforts to marshal and distribute assets. United States v. Blech et al., 02 Cr. 122, Dkt. No. 276 (S.D.N.Y. Oct. 3, 2008). Rittweger's criminal restitution order permitted payments from third parties to satisfy his restitution obligation. The remedy of disgorgement has a different focus.

The primary purpose of disgorgement as a remedy for violation of the securities laws is to deprive violators of their ill-gotten gains, thereby effectuating the deterrence objectives of those laws. See, e.g., SEC v. Wang, 944 F.2d 80, 85 (2d Cir. 1991); SEC v. Commonwealth Chemical Securities,

2

Inc., 574 F.2d 90, 102 (2d Cir. 1978). The distinction between disgorgement and restitution is that, unlike restitution, "the primary purpose of disgorgement to [the SEC] is not to compensate investors," but rather to force "a defendant to give up the amount by which he was unjustly enriched." Commonwealth, 574 F.2d at 102. Accord, e.g., SEC v. Tome, 833 F.2d 1086, 1096 (2d Cir. 1987); SEC v. McCaskey, No. 99 Civ. 6153, 2002 U.S. Dist. LEXIS 4915, *10 (S.D.N.Y. Mar. 26, 2002). "It is well-established that disgorgement is remedial rather than punitive, since a fundamental policy underlying disgorgement is to prevent the unjust enrichment of the wrongdoer rather than to punish him". SEC v. Grossman, No. 87 Civ. 1031, 1997 U.S. Dist. LEXIS 6225, *9 (S.D.N.Y. May 6, 1997), aff'd in part, vacated in part on other grounds sub nom, SEC v. Hirshberg, 173 F.3d 846 (2d Cir. 1999).

The amount of disgorgement should include all gains flowing from illegal activities, plus prejudgment interest, and "need only be a reasonable approximation of profits causally connected to the violation." First Jersey Sec., 101 F.3d at 1475 (quoting SEC v. Patel, 61 F.3d 137, 139 (2d Cir. 1995)); see also SEC v. Downe, 969 F. Supp. 149, 157 (S.D.N.Y. 1997) (same). "Financial hardship does not preclude the imposition of

3

an order of disgorgement," and Defendant's current financial net-worth is irrelevant to the Court's consideration of the disgorgement award. SEC v. One Wall Street, Inc., No. 06 Civ. 4217, 2008 WL 63256, at *3 (E.D.N.Y. Jan. 3, 2008); SEC v. Inorganic Recycling Corp., No. 99 Civ. 10159, 2002 WL 1968341, at *2 (S.D.N.Y. Aug. 23, 2002). Here, the Commission is entitled to full disgorgement and prejudgment interest in order to deprive Rittweger of his unjust enrichment. SEC v. Rosenfeld, No. 97 Civ. 1467, 2001 U.S. Dist. LEXIS 166, at *4, *9 (S.D.N.Y. Jan. 9, 2001).

As noted above, the courts require disgorgement to be "causally connected" to the fraudulent scheme of the defendant. SEC v. Warde, 151 F.3d 42, 50 (2d Cir. 1998) (quoting Patel, 61 F.3d 139). However, "[s]o long as the measure of disgorgement is reasonable, 'any risk of uncertainty should fall on the wrongdoer whose illegal conduct created that uncertainty.'" Id. (quoting Patel, 61 F.3d at 140). The Patel Court upheld a disgorgement estimate made by the Commission to determine the amount an insider saved by selling his stock prior to a damaging announcement. 61 F.3d at 140. The court acknowledged the lower court's "wide latitude" in setting the penalty upon a showing of a connection between the estimate and the fraud. Id.

4

Paragraphs 33 through 45 of the SEC's Statement of Undisputed Facts in Support of its Motion for Summary Judgment ("Fact Statement") describe Rittweger's financial gain through the Credit Bancorp scheme. During the fraud, Rittweger transferred funds from Credit Bancorp accounts for his own personal benefit which were used to make purchases at Victoria's Secret, Home Depot, Toys R Us, Radio Shack, various jewelry stores, and Barnes & Noble. Id. at ¶ 37.

In addition to the use of Credit Bancorp cash before the commencement of the instant case, Rittweger later misappropriated Credit Bancorp funds by transferring funds into accounts in his wife's name in violation of the asset freeze. Id. at ¶¶ 38-42. Rittweger used these funds to pay his personal expenses after the asset freeze was in place, expenses which were never authorized by this Court. Rittweger used another account to pay his long overdue personal taxes and purchase some recreational property. Id. at ¶ 43.

The Commission has also requested that the Court award prejudgment interest. The decision of whether to order prejudgment interest, like the decision to grant disgorgement

and in what amount, is left to the discretion of this court. First Jersey Sec., 101 F.3d at 1476. Requiring the payment of interest prevents a defendant from obtaining the benefit of "what amounts to an interest free loan procured as a result of illegal activity." SEC v. Moran, 944 F. Supp. 286, 295 (S.D.N.Y. 1996).

"In deciding whether an award of prejudgment interest is warranted, a court should consider (i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court. In an enforcement action brought by a regulatory agency, the remedial purpose of the statute takes on special importance." First Jersey Sec., 101 F.3d at 1476 (quotations and citations omitted). The First Jersey court determined the IRS underpayment rate is an appropriate rate for prejudgment interest on disgorgement awards. Id. at 1476. Numerous other courts in this district have also used the IRS underpayment rate. See, e.g., SEC v. Aragon Capital Management, LLC, et al., 672 F. Supp. 2d 421, 445-46 (S.D.N.Y. 2009); SEC v. Colonial Investment Management, LLC, No. 08 Civ. 8397, 2009 U.S. Dist.

LEXIS 74620, *4 (S.D.N.Y. Aug. 19, 2009); SEC v. Universal Exp., Inc., 646 F. Supp. 2d 552, 567 (S.D.N.Y. 2009).

Investors still have not recouped the entirety of their losses as defined by the Plan of Distribution, and the imposition of prejudgment interest will permit at least the possibility that the loss may someday be satisfied. As noted above, Rittweger has not made any contribution to the victims of the fraud.

The SEC has calculated the prejudgment interest using the IRS underpayment rate commencing its calculation as of the date of the filing of this action. Using the IRS underpayment rate, the SEC calculates that prejudgment interest from December 1, 1999 to September 30, 2010 equals $16,930,952.23.

As noted by the Receiver, the criminal restitution order was based on a calculation that was significantly lower than the remaining claims of Credit Bancorp's customers under this Court's Plan of Distribution because the criminal restitution order did not include the Supplemental Distributions and Depreciation Adjustments approved by this Court as part of its Plan of Distribution. The criminal sentence provided that

Rittweger's restitution obligation could be deemed satisfied by payments from other sources. When the Second Distribution of Receivership Assets was approved in February 2007, the amount of that distribution exceeded Rittweger's criminal restitution obligation. Disgorgement is independent of the lifting of Rittweger's criminal restitution obligation by any offsetting payments made by third party sources to Rittweger's victims.

### Rittweger's Motion to Enjoin the Administrative Proceeding is Denied

Rittweger has moved to enjoin the SEC's administrative proceeding brought against him, contending it (1) violates the re-examination clause of the Seventh Amendment and (2) is an attempt by the Commission to obtain additional fines and/or monetary awards not awarded by this Court in a more favorable forum. That application is denied.

However, the Commission is not seeking any additional monetary relief from Rittweger in its follow-on administrative proceeding. See Order Instituting Administrative Proceedings Pursuant to Section 15(b) of the Securities Exchange Act of 1934 and Notice of Hearing, dated September 28, 2010. The purpose of the administrative proceeding is to permanently bar Rittweger

8

from association with any broker or dealer. See Id. Section 15(b)(6) of the Securities Exchange Act of 1934 empowers the Commission to place limitations on an individual's activities or to suspend or bar an individual from association with any broker or dealer. 15 U.S.C. § 78o(b)(6)(A). In particular, the SEC has statutory authority to file a follow-on administrative proceeding after it receives injunctive relief in related civil proceedings. 15 U.S.C. § 78o(b)(6)(A)(iii).

The Seventh Amendment provides that "no fact tried by a jury, shall be otherwise re-examined in any Court of the United States." U.S. CONST. amend. VII. Courts have held that "the seventh amendment is generally inapplicable in administrative proceedings, where the fact finder possesses a particular expertise that makes a jury determination inappropriate." Benjamin v. Traffic Executive Ass'n - Eastern Railroads, 688 F. Supp. 903, 909 (S.D.N.Y. 1988) (citing Curtis v. Loether, 415 U.S. 189 (1974)).

Moreover, as set forth above, the administrative proceeding in this case does not purport to re-examine facts previously determined by a jury. Instead, the administrative proceeding is based on the entry of injunctive relief which did

9

not occur until September 13, 2010. Consequently, the Seventh Amendment's re-examination clause is not implicated.

Rittweger also has been collaterally estopped. He made "no attempt to dispute the SEC's claim that he is collaterally estopped from relitigating the facts which underlie his criminal conviction." See Credit Bancorp, 2010 U.S. Dist. LEXIS 94885, at *44-45. Where "the party against whom estoppel is asserted has litigated questions of fact, and has had the facts determined against him in an earlier proceeding . . . there is no further fact finding function for the jury to perform." Benjamin, 688 F. Supp. at 909-10 (quoting Parklane Hosiery Co. v. Shore, 439 U.S. 322, 335-36 (1979)). Rittweger was criminally convicted and cannot relitigate those facts in this or any other proceeding and for the reasons set forth above his motion to enjoin the administrative proceeding is denied.

## Conclusions

For the reasons set forth above, final judgment imposing disgorgement of $18,128,599.40 plus prejudgment interest in the amount of $16,930,952.23 for a total of

$35,059,551.63 will be entered with respect to Rittweger, and his motion to enjoin the administrative proceeding is denied.

It is so ordered.

New York, NY
February 10, 2011

                                                    *Sweet*
                                   ROBERT W. SWEET
                                       U.S.D.J.