UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

SECURITIES AND EXCHANGE COMMISSION,

                     Plaintiff,            99 Civ. 11395

      -against-                       OPINION

CREDIT BANCORP, LTD., CREDIT BANCORP,
INC., RICHARD JONATHAN BLECH, THOMAS
MICHAEL RITTWEGER, AND DOUGLAS C.
BRANDON,

                    Defendants.

------------------------------------------X

A P P E A R A N C E S:

        Attorneys for Plaintiff

        SECURITIES AND EXCHANGE COMMISSION
        15 West South Temple, Suite 1800
        Salt Lake City, UT  84101
        By:  Thomas M. Melton, Esq.

        SECURITIES AND EXCHANGE COMMISSION
        233 Broadway
        New York, NY  10279
        By:  Robert Blackburn, Esq.

        Pro Se

        RICHARD J. BLECH
        927 Rte Du Saleve
        74560 Monnetier-Mornex, France

**Sweet, D.J.**

Plaintiff the Securities and Exchange Commission ("SEC" or "Plaintiff") submitted the present motion for final judgment against Richard J. Blech ("Blech" or "Defendant") on October 13, 2010.  The SEC requests that the Court enter an order requiring Blech to disgorge $10,908,856.71 plus prejudgment interest in the amount of $10,328,821.23 for a total of $21,237,677.94.  This amount represents the funds misappropriated by Blech and used for his own purposes, plus interest.  The SEC seeks this order in addition to the orders the Court has already issued, which provide for an injunction against Blech from future violations of the securities laws, criminal penalties of restitution and incarceration, asset freezes, appointment of a Receiver, civil contempt judgments, and an outstanding arrest warrant.  The SEC's request for disgorgement and prejudgment interest is granted.

In opposition, Defendant seeks to vacate the Court's 2001 summary judgment order and defeat the present motion for lack of adequate service.  Defendant's requests are denied.

**Disgorgement and Prejudgment Interest Are Appropriate Remedies**

1

"Upon a finding that federal securities laws have been violated, the district court has broad 'equitable power to fashion appropriate remedies, including ordering that culpable defendants disgorge their profits.'" SEC v. Bocchino, No. 98 Civ. 7525, 2002 U.S. Dist. LEXIS 22047, at *4 (S.D.N.Y. Nov. 8, 2002) (quoting SEC v. First Jersey Sec., Inc., 101 F.3d 1450, 1474 (2d Cir. 1996)). The Court has already ordered Blech to pay disgorgement and prejudgment interest "as described in the Commission's previous Memorandum of Points and Authorities in Support of Motion for Summary Judgment." See Order Granting Motion for Summary Judgment and Judgment of Permanent Injunction and Other Relief, 11-12 (Sept. 9, 2001) (Dkt. No. 753).

The primary purpose of disgorgement as a remedy for violation of the securities laws is to deprive violators of their ill-gotten gains, thereby effectuating the deterrence objectives of those laws. See, e.g., SEC v. Wang, 944 F.2d 80, 85 (2d Cir. 1991); SEC v. Commonwealth Chemical Securities, Inc., 574 F.2d 90, 102 (2d Cir. 1978). The distinction between disgorgement and criminal restitution is that, unlike restitution, "the primary purpose of disgorgement to [the SEC] is not to compensate investors," but rather to force "a

2

defendant to give up the amount by which he was unjustly

enriched." Commonwealth, 574 F.2d at 102.  Accord, e.g., SEC v.

Tome, 833 F.2d 1086, 1096 (2d Cir. 1987); SEC v. McCaskey, No.

99 Civ. 6153, 2002 U.S. Dist. LEXIS 4915, *10 (S.D.N.Y. Mar. 26,

2002).  "It is well-established that disgorgement is remedial

rather than punitive, since a fundamental policy underlying

disgorgement is to prevent the unjust enrichment of the

wrongdoer rather than to punish him". SEC v. Grossman, No. 87

Civ. 1031, 1997 U.S. Dist. LEXIS 6225, *9 (S.D.N.Y. May 6,

1997), aff'd in part, vacated in part on other grounds sub nom,

SEC v. Hirshberg, 173 F.3d 846 (2d Cir. 1999); see also SEC v.

Manor Nursing Centers, Inc., 458 F.2d 1082, 1104 (2d Cir. 1972)

("The effective enforcement of the federal securities laws

requires that the SEC be able to make violations unprofitable.

The deterrent effect of an SEC enforcement action would be

greatly undermined if securities laws violators were not

required to disgorge illicit profits.").  As a result, "the

measure of disgorgement need not be tied to the losses suffered

by defrauded investors,… and a district court may order

disgorgement regardless of whether the disgorged funds will be

paid to such in investors as restitution." SEC v. Fishback

Corp., 133 F.3d 170, 176 (2d Cir. 1997) (citations omitted).

3

The amount of disgorgement should include all gains
flowing from illegal activities, plus prejudgment interest, and
"need only be a reasonable approximation of profits causally
connected to the violation." First Jersey Sec., 101 F.3d at
1475 (quoting SEC v. Patel, 61 F.3d 137, 139 (2d Cir. 1995));
see also SEC v. Downe, 969 F. Supp. 149, 157 (S.D.N.Y. 1997)
(same); SEC v. Calvo, 378 F.3d 1211, 1217 (11th Cir. 2004) ("The
SEC is entitled to disgorgement upon producing a reasonable
approximation of a defendant's ill-gotten gains…. Exactitude is
not a requirement."); SEC v. Warde, 151 F.3d 42, 50 (2d Cir.
1998) ("So long as the measure of disgorgement is reasonable,
'any risk of uncertainty should fall on the wrongdoer whose
illegal conduct created that uncertainty.'") (quoting Patel, 61
F.3d 140). The Patel Court upheld a disgorgement estimate made
by the SEC to determine the amount an insider saved by selling
his stock prior to a damaging announcement. 61 F.3d at 140. In
doing so, the court acknowledged the lower court's "wide
latitude" in setting the penalty upon a showing of a connection
between the estimate and the fraud. Id.

Furthermore, "[f]inancial hardship does not preclude
the imposition of an order of disgorgement," and Defendant's
current financial net-worth is irrelevant to the Court's

4

consideration of the disgorgement award.  SEC v. One Wall
Street, Inc., No. 06 Civ. 4217, 2008 WL 63256, at *3 (E.D.N.Y.
Jan. 3, 2008); SEC v. Inorganic Recycling Corp., No. 99 Civ.
10159, 2002 WL 1968341, at *2 (S.D.N.Y. Aug. 23, 2002).  Here,
the Commission is entitled to full disgorgement and prejudgment
interest in order to deprive Blech of his unjust enrichment.
SEC v. Rosenfeld, No. 97 Civ. 1467, 2001 U.S. Dist. LEXIS 166,
at *4, *9 (S.D.N.Y. Jan. 9, 2001).

        Citing a combination of funds misappropriated by Blech
for personal use and improper investments in his own name, the
SEC states, as noted above, that Blech should be required to
disgorge $10,908,856.71.  This figure represents the minimum
amount that he misappropriated from Credit Bancorp's customers.

        As noted by the Receiver, the criminal restitution
order was based on a calculation that was significantly lower
than the remaining claims of Credit Bancorp's customers under
this Court's Plan of Distribution because the criminal
restitution order did not include the Supplemental Distributions
and Depreciation Adjustments approved by this Court as part of
its Plan of Distribution.  The criminal sentence provided that
Blech's restitution obligation could be deemed satisfied by

payments from other sources.  When the Second Distribution of
Receivership Assets was approved in February 2007, the amount of
that distribution exceeded Blech's criminal restitution
obligation.  Disgorgement is independent of the lifting of
Blech's criminal restitution obligation by any offsetting
payments made by third party sources to Blech's victims.

         The SEC has also requested that the Court award
prejudgment interest.  The decision of whether to order
prejudgment interest, like the decision to grant disgorgement
and in what amount, is left to the discretion of this court.
First Jersey Sec., 101 F.3d at 1476.  Requiring the payment of
interest prevents a defendant from obtaining the benefit of
"what amounts to an interest free loan procured as a result of
illegal activity."  SEC v. Moran, 944 F. Supp. 286, 295
(S.D.N.Y. 1996).

         "In deciding whether an award of prejudgment interest
is warranted, a court should consider (i) the need to fully
compensate the wronged party for actual damages suffered, (ii)
considerations of fairness and the relative equities of the
award, (iii) the remedial purpose of the statute involved,
and/or (iv) such other general principles as are deemed relevant

by the court.   In an enforcement action brought by a regulatory
agency, the remedial purpose of the statute takes on special
importance." First Jersey Sec., 101 F.3d at 1476 (quotations
and citations omitted).


        Here, Defendant was able to use the funds he obtained
in the Credit Bancorp scheme as an "interest free loan," and the
SEC contends, and he does not deny, that Blech still resides in
a home purchased and renovated with funds from Blech's illegal
activity.   Furthermore, the SEC contends that victims of the
scheme have not fully recouped their losses and assessing
prejudgment interest against Blech will help them do so.   In
light of these factors, which Blech does not challenge,
assessing prejudgment interest is appropriate.


        The First Jersey court determined the IRS underpayment
rate is an appropriate rate for prejudgment interest on
disgorgement awards.   Id. at 1476.   Numerous other courts in
this district have also used the IRS underpayment rate.   See,
e.g., SEC v. Aragon Capital Management, LLC, et al., 672 F.
Supp. 2d 421, 445-46 (S.D.N.Y. 2009); SEC v. Colonial Investment
Management, LLC, No. 08 Civ. 8397, 2009 U.S. Dist. LEXIS 74620,

*4 (S.D.N.Y. Aug. 19, 2009); <u>SEC v. Universal Exp., Inc.</u>, 646 F.
Supp. 2d 552, 567 (S.D.N.Y. 2009).


      The SEC has calculated prejudgment interest using the
IRS underpayment rate and commencing its calculation as of the
date of the filing of this action.  The SEC calculates that
prejudgment interest from December 1, 1999 to September 30, 2010
equals $10,328,821.23.


## The Motion and Underlying Order Were Properly Served on Defendant

      Defendant contends that the present motion, along with
the underlying September 20, 2001 summary judgment order and
other judicial documents, have not been properly served upon him
and that the order should be vacated and the SEC's motion should
be denied.  As Defendant resides in France, he contends that
Federal Rule of Civil Procedure 4 requires service pursuant to
the Hague Convention on the Service Abroad of Judicial and
Extrajudicial Documents ("Hague Service Convention"), Rule 4(f).
Defendant's requests are denied.


      Defendant's motion to vacate the September 20, 2001
order appears to be brought under Fed. R. Civ. P. 60(b).  Rule

60(c)(1) requires that such a motion "be made within a reasonable time." Blech concedes that he was aware of the summary judgment order in 2002, and that he was represented by counsel at that time. (Def. Oct. 25, 2010 Letter, at 2.) Yet he has not made any attempt to contest the Court's order until now, over eight years later. Such a delay was unreasonable under the circumstances, and Defendant may not now obtain relief under Rule 60(b). See Lee v. Marvel Enterprises, Inc., No. 02 Civ. 8945, 2011 WL 382986, at *6 (S.D.N.Y. Feb. 4, 2011) (holding a five year delay to be unreasonable); Kellogg v. Strack, 269 F.3d 100, 104 (2d Cir. 2001) ("Kellogg's motion was made twenty-six months after the entry of the final judgment, a period of time which constitutes a patently unreasonable delay absent mitigating circumstances."); Sonhouse v. Nynex Corp., No. 00-7236, 2000 U.S. App. LEXIS 22669, at *2 (2d Cir. Sept. 5, 2000) (upholding district court finding that Rule 60(b) motion filed three years after entry of judgment was untimely); Graham v. Sullivan, No. 86 Civ. 163, 2002 U.S. Dist. LEXIS 9006, at *3-4 (S.D.N.Y. May 10, 2002) (holding that sixteen-month delay in bringing Rule 60(b) motion was unreasonable)..

Defendant also fails to defeat Plaintiff's motion for disgorgement and prejudgment interest (and its 2001 motion for

9

summary judgment) on failure of service grounds, as the Hague
Service Convention only applies to the initial service of
process, namely the summons, not subsequent judicial documents.
See Volkswagenwerk Akiengesellschaft v. Schlunk, 486 U.S. 694,
700 (1988) (finding that the history of the Hague Convention
"supports our view that Article I [of the Convention] refers to
service of process in the technical sense"); 1 B. Ristau,
International Judicial Assistance (Civil and Commercial) §4-2
(2000 revision) (recognizing that the Hague Service Convention
applies only where there is a need to make "formal delivery" of
a judicial document "to charge [the recipient] with notice of
the institution of a legal proceeding.") The structure of the
Federal Rules of Civil Procedure supports this distinction.
Rule 4(f) sets forth the rules for service of a summons outside
the United States and expressly refers to the Hague Service
Convention. Rule 5, however, addresses the service of
subsequent judicial documents, including written motions, and
does not mention the Hague Service Convention or provide special
procedural requirements for international service. Apart from
those judicial documents which must be served pursuant to Rule
4, Plaintiff need only serve judicial documents, including the
present motion, on Defendant pursuant to Rule 5 despite
Defendant's foreign residence.

Defendant cites <u>Shenouda v. Mehanna</u>, 203 F.R.D. 166 (D.N.J. 2001), in support of his contention.  However, <u>Shenouda</u> is distinguishable as it involved the failure to serve a summons and complaint in compliance with the Hague Service Convention, not subsequent judicial papers.  <u>Id.</u> at 169.

Defendant's contention that the Receiver's use of a French Bailiff in 2009 to serve a motion for contempt supports his position is similarly unavailing.  Local Rule 83.9 requires that, where a party appears <u>pro se</u>, service of a contempt motion must be served "in the manner provided for by the Federal Rules of Civil Procedure for the service of a summons."  This provision required the Receiver to comply with Fed. R. Civ. P. 4(f) and serve Defendant pursuant to French law.  However, this provision only applies to contempt motions.

As noted above, Fed. R. Civ. P. 5 is applicable to service of the judicial documents at issue.  Rule 5(b)(1) governs the service of pleadings and other papers when a party is represented by counsel.  It provides: "[i]f a party is represented by an attorney, service under this rule must be made on the attorney unless the court orders service on the party."

11

Fed. R. Civ. P. 5(b)(1).  <u>See also</u> <u>First City, Texas-Houston</u>
<u>N.A. v. Rafidian Bank</u>, 197 F.R.D. 250, 255 (S.D.N.Y. 2000)
("Moreover, Rule 5(b) authorize(s) such service to be made
either by delivering a copy to the attorney or by mailing it to
the attorney.").  The motion for summary judgment was served on
Proskauer Rose, LLP, and the motion for disgorgement was served
on Roland G. Riopelle, both Blech's counsel of record at the
time of service.  Blech has failed present sufficient grounds
for the court to vacate its prior order and deny Plaintiff's
motions for lack of service.

**Conclusions**

          For the reasons set forth above, final judgment
imposing disgorgement of $10,908,856.71 plus prejudgment
interest in the amount of $10,328,821.23 for a total of
$21,237,677.94 will be entered with respect to Blech.  Blech's
motion to vacate the September 20, 2001 summary judgment order
is denied.

          It is so ordered.

New York, NY,
February /4, 2011                  ROBERT W. SWEET
                                      U.S.D.J.

                         12